UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CIVIL CASE NO.  9:25-cv-80669

**THE HERB IMPORT COMPANY,**  )
**a Louisiana for profit company**  )
)
  *Plaintiff,*  )
)
**v.**  )
)
)
**PAYROLL, LLC,  a Florida for-profit**  )
**company**  )
)
  *Defendant.*  )
_____/

## COMPLAINT WITH DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, **THE HERB IMPORT COMPANY, LLC,** by and through its undersigned attorney, and files this *Complaint With Demand for Jury Trial* against Defendant, **PAYROLL, LLC**, <u>and so states</u>:

### I. JURISDICTION, VENUE, AND PARTIES

1. This is an action for damages exceeding $350,000 exclusive of interests and costs, under the federal civil R.I.C.O. Act; *Coronavirus Aid, Relief, and Economic Security (CARES) Act: Employee Retention Credit;  Federal Trade Commission Act: Unfair or Deceptive Acts or Practices*; and state law fraud.

2. Diversity of citizenship exists between the parties, but the acts giving rise to this Complaint occurred in Florida and the Defendant committing those acts is located

1

in and does business in Palm Beach Gardens, Palm Beach County, Florida. Well-settled case law holds Defendant must be held accountable to answer this Complaint.

3. Jurisdiction is properly invoked in this court pursuant to 15 U.S. Code § 45 and 28 U.S. Code § 1332 diversity of citizenship jurisdiction, and tort laws of Florida. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, 15 U.S. Code § 45, Public Law 116–123, 18 U.S. Code §§ 1964 and 1962, 28 U.S. Code § 1332, and supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy. Plaintiff seeks damages exceeding the statutory minimum exclusive of costs and interests.

4. Venue is proper under 28 U.C.S. § 1391(b)(2) because a substantial part of the events or omissions accruing these claims occurred in this judicial district and division.

5. Defendant, PAYROLL, LLC, ("Defendant" or "Payroll") is a limited liability company in Florida with a principal place of business located at 8409 N. Military Trial, STE 119, Palm Beach Gardens, FL 33410. Payroll operates and does business in Florida and in interstate commerce, selling its business services and products to customers in other states, including have sold its business services giving rise to this claim to customer/Plaintiff The Herb Import Company, LLC, located in New Orleans, Louisiana, and is otherwise *sui juris*. Defendant is located in, does business in, and is subject to this judicial district and court division's subject matter and personal jurisdiction.

6. Plaintiff, **T**HE HERB IMPORT COMPANY, LLC, is a business located and doing business in New Orleans, Louisiana, which purchased the business services of Payroll, LLC,

located in FL Lauderdale, Broward County, Florida, and is otherwise *sui juris*. This court has subject matter and personal jurisdiction under diversity of citizenship wherein Plaintiff conducted business with Defendant in Florida; the acts giving rise to this claim occurred in Florida against Plaintiff by Defendant's Florida business agreement; and Defendant is located and does business in Florida in this judicial district and court division.

7. Plaintiff has met all conditions precedent to proceed with this action.

## II.  GENERAL FACTS

8. Plaintiff re-alleges and incorporates paragraphs 1 – 7 as if plead herein.

9. Plaintiff, The Herb Import Company, LLC, is a business located and doing business in New Orleans, Louisiana, to which Defendant, Payroll, LLC, located in FT Lauderdale, FL, solicited and offered its business services to obtain federal funds for Plaintiff under the Employee Retention Credit program (ERC) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act, in 2022.

10. Plaintiff was already doing business with Payroll for its employee payment processing but declined to do business with Payroll for the newly solicited COVID-related C.A.R.E.S. Act services.

11. Defendant advertises and offers its business services publicly to businesses throughout the nation in/via interstate commerce. At all times material hereto, Plaintiff was a consumer of Defendant's business under federal and state laws.

12. The federal ERC program was only available to businesses, not individuals.

13. After Plaintiff declined Payroll's offered new business services due to Payroll's fee for the services, Payroll begam offering Plaintiff multiple promotions and

3

discounts to induce consumer Plaintiff into doing business with and becoming a consumer of Payroll's additional business ERC services.

14. For example, Payroll's advertised fee for its ERC services was 20-30% contingency fee of the funds obtained for its business consumers. After Plaintiff declined multiple times, Payroll then sent Plaintiff a written offer reducing its contingency fee to 15% and offering additional discounts to Plaintiff to induce Plaintiff to purchase Payroll's new federal business ERC services. [**EXHIBIT A**].

15. Only after Payroll reduced its fee and offered the multiple discounts, Plaintiff accepted that offer and entered into an Agreement with Payroll for the services in April, 2022.

16. However, Payroll sent Plaintiff a contract wherein it had performed a bait-and-switch of inserting the original 30% fee back in the contract.[1] [**EXHIBIT B**].

17. Plaintiff executed that contract and Payroll then demanded the 30% fee of the funds it ultimately obtained for Plaintiff, refusing to accept the 15% fee which Plaintiff offered to pay.  When Plaintiff would not pay that fee, Payroll took Plaintiff to court for breach of contract in a state claim. [**See Footnote 1**].

18. Defendant did know, knew or should have known at the time of soliciting and inducing Plaintiff to agree to Payroll's new services obtaining federal funds after Plaintiff had already declined multiple times, that Plaintiff was desperately in need of the funds due to lost business and decreased consumers as a common

---

[1] A motion has been filed to set aside the default in that state case wherein Payroll's counsel lulled Plaintiff into waiting to respond by agreeing to settle the case but then denied it had ever agreed to settle.  The only claim in that state law case is a Breach of Contract, which is not being litigated in this federal case.

4

knowledge result of the international COVID pandemic and national COVID lock down on businesses and travel.

19. Defendant did know, knew or should have known at the time of soliciting and inducing Plaintiff to agree to Payroll's new services obtaining federal funds after Plaintiff had already declined multiple times, that Plaintiff was desperately in need of the funds due to lost business and decreased consumers as a result of the international COVID pandemic and national COVID lock down on businesses and travel because Payroll had intimate knowledge of Plaintiff's finances due to providing existing financial services for Plaintiff.

20. Many businesses nationwide were required to close and/or not provide services to the public for a year or more during COVID due to the national lockdown put in place by the federal government.

21. The federal COVID lockdown also precluded people from traveling and/or assembling in public places outside their homes unless necessary or essential for a year or more.

22. Even Courts were closed during the national COVID lockdown except for necessary hearings and trials, which in most occasions were conducted virtually.

23. Defendant also knew that because Plaintiff was already a consumer doing financial business with Payroll for payroll services processing, Plaintiff would not notice that Payroll had deceptively inserted 30% fee into the contract instead of the agreed upon 15% fee for Payroll's business services to obtain federal funds for Plaintiff.

24. Defendant also knew that federal law prevented "Aggressive Marketing" of the

ERC to business consumers, to include contingency fees for ERC services because it was marketing its ERC services nationwide to business.

25. In fact, the IRS put out a warning **not** to use the services of businesses requiring contingency fee contracts, but to instead report them: [**EXHIBIT C at 3 – 4**].

    Warning signs of aggressive ERC marketing

    - Fees based on a percentage of the refund amount of Employee Retention Credit claimed – you should always avoid a tax preparer basing their fee on the amount of the refund.

26. At all times material hereto, Defendant as a business provider of obtaining federal ERC funds to its business consumers knew it was not supposed to charge a contingency fee, and not only relied on the fact that its business consumers would not know that information, but also that the multiple businesses to which it was already providing financial services across state line would believe, rely on, and trust without question Defendant and that Defendant was following all federal laws and was trustworthy, and that whatever Defendant sent the businesses to sign was legal and represented what had been agreed between the business and Payroll, and would sign any documents sent by Defendant without question.

27. Plaintiff did in fact believe, rely on, and trust without question that any business documents and services sent, offered, marketed, and provided to Plaintiff by Payroll would represent what was agreed and comply with the law, and Plaintiff did do business with, rely on, trust, believe, and sign documents including contract sent by Payroll, based on that existing business relationship and reasonable belief, reliance, and trust without question of Defendant.

28. Further, during the tine at issue, Defendant commenced an intentional and unlawful business pattern and practice of offering these same business services to obtain federal ERC funds on a contingency fee basis to multiple businesses outside of Florida/in other states in interstate commerce, as offered/agreed by Plaintiff.

29. Then, when those business could not or did not pay whatever contingency fee Payroll had actually listed in their contracts, Payroll would sue the businesses in state court in Florida, knowing it would be a financial hardship for most of those small businesses to litigate in a different state, especially wherein the state court system requires multiple more hearings and appearances than federal court, and wherein the businesses were already financially strapped due to COVID.

30. For example, in Broward County, Florida, during the years of 01/01/2020 – to date, Payroll LLC filed over 100 lawsuits, most against out of state businesses, and most seeking payment of Payroll's contingency fee for obtaining ERC federal funds; using the same Complaint allegations and template as alleged against Plaintiff; and are represented by the same counsel for Payroll as against Plaintiff.  [**EXHIBIT D**].

31. Many of the out-of-state businesses lost via default.  [*Id*]**.**

### III. FEDERAL CLAIMS

### COUNT I: FEDERAL CIVIL R.I.C.O./18 U.S. Code §§ 1964 and 1962

32. Plaintiff re-alleges and incorporates paragraphs 1 – 31 as if plead herein.

33. At all times material hereto, Defendant was a licensed business located, headquartered, and doing business in Florida operating in interstate commerce through publicly advertising, marketing, offering, and providing its business services to

7

businesses in other states beyond Florida, for a fee, to include to its business services to procure federal funds for those businesses.

34. Defendant is a business with a corporate structure, having business officers and/or managers, business locations, employees, counsel, marketing and selling its business services to the public, and doing business in interstate commerce. Its officers, leaders, managers, and/or employees participated in Defendant's interstate commerce scheme at the direction and/or order of Defendant, whether express or implied, and at all times Defendant intended to establish and operate its unlawful scheme, practice, and/or pattern of racketeering activity against small businesses in and beyond the state of Florida purely for its financial gain and/or benefit and to the harm, coercion, misleading, to/of those businesses. Defendant is subject to the federal civil R.I.CO. Act.

35. Defendant is an enterprise, business, and person operating in interstate commerce under and/or for the purposes of 18 U.S. Code §§ 1964 and 1962.

36. At all times material hereto, Defendant established, set up, and operated, an intentional scheme, pattern, and /or practice of racketeering activity to deceive, mislead, and/or defraud its business consumers and clients including through its interstate commerce operations, for the sole purpose of increasing revenue to and financial gains for Defendant.

37. Defendant's actions are indictable under federal law, extortionate credit transactions, fraudulent racketeering activities affecting interstate commerce, compelling collection of unlawful debt, threatening and/or filing fraudulent lawsuits to compel and/or induce collection of unlawful debt and/or interference in interstate

commerce.

38. Defendant – a business located and doing business in Florida -- intentionally, solely for its own financial gain and benefit in interstate commerce actively, induced and lulled Plaintiff –a business located in and doing business in Louisiana -- to suffer as a victim of Defendant's interstate commerce racketeering activity; coercing and pressuring Plaintiff through offered aggressive marketing tactics of reduced contingency fees and additional financial services discounts to enter into an agreement for Defendant to obtain Plaintiff federal ERC funds under the C.A.R.E.S. Act, but then performed a bait-and-switch of changing the agreed contingency fee amount in the contract without Plaintiff's knowledge or consent while knowing that Plaintiff would execute the contract without question or likely fully reading due to Plaintiff's reasonable reliance and trust on Defendant based on their existing business relationship, refused the agreed 15% and even Attorneys fees which Plaintiff offered to pay after the funds were received, instead demanded the unlawful and non-agreed 30%, then fraudulently filed suit against Plaintiff in state court in Florida and demanded 30% plus Attorneys fees for those federal funds.

39. During the same time as Defendant filed its state suit against Plaintiff for breach of contract regarding federal ERC funds, Defendant sued over 50 other businesses in the same state court for alleged nonpayment of its contingency fees or other services stemming from its federal ERC business services with multiple of those businesses located outside of Florida, and where many of those businesses defaulted or just paid the unlawful contracts because they could not afford to fight

9

litigation against Payroll, especially in the Florida state court system which requires multiple appearances, hearings, motions, and counsel for corporations.

40. Defendant, at all times material hereto, was a business enterprise and legal individual intentionally operating a racketeering scheme in interstate commerce regarding federal funds, and Plaintiff is a victim of Defendant's interstate racketeering scheme, and Defendant intended for Plaintiff to become a victim of its interstate racketeering scheme.

41. Defendant's officers and/or managers all the way to its final business decision marker(s) participated in its scheme, marketing and contacting businesses to accept its federal interstate ERC business services, coercing, lulling, and pressuring those businesses into accepting its interstage ERC services with aggressive and unlawful marketing and business practices, preying on those small businesses due to their strained financial status during the national COVID pandemic and shutdown, suing them in Florida state court where it knew they would not likely be able to defend against Defendant's claims, all and solely for the financial benefit of Defendant, and Defendant committed those same acts against Plaintiff, to include a bait-and-switch scheme of the agreed upon fee for its services.

42. As a direct and proximate cause of Defendant's civil R.I.C.O./ interstate racketeering scheme, Plaintiff suffered loss of business income and revenue, loss of business reputation, loss of business quality, was forced to retain counsel to defend against Payroll's unlawful deceptive and fraudulent practices in state and federal court, and suffered other financial loss to include costs and expenses. Defendant's actions were intentional and pierced the veil of any state/federal LLC liability protections.

10

43. **Wherefore,** Plaintiff seeks trial by jury and damages exceeding $350,000, attorneys fees, and costs, and all other allowed relief, on all claims triable against Defendant.

## COUNT II:  VIOLATION, UNLAWFUL AND DECEPTIVE BUSINESS PRACTICES, AND FRAUD, UNDER THE CORONAVIRUS, AID, RELIEF, AND ECONOMIC SECURITY (C.A.R.E.S.) ACT:  EMPLOYEE RETENTOIN CREDIT ("ERC") /federal Public Law 116–123, 18

44. Plaintiff re-alleges and incorporates paragraphs 1 – 31 as if plead herein.

45. At all times material hereto, Defendant was a licensed business located, headquartered, and doing business in Florida operating in interstate commerce through publicly advertising, offering, and providing its business services to businesses in other states beyond Florida, for a fee, to include to its business services to procure federal ERC funds under the C.A.R.E.S. Act to and for businesses outside of Florida. Defendant is subject to the C.A.R.E.S. Act.

46. It is unlawful for Defendant to advertise and/or transact business or charge its business clients fees for Defendant's business services which do not comply with the C.A.R.E.S. Act, mislead consumers through its business advertisements and/or services to induce consumers into business dealings and transactions with Defendant, and to intentionally mislead and/or conduct deceptive or unlawful business practices to induce consumers to do or transact business with Defendant.

47. Defendant knew or should have known that under the *C.A.R.E.S. Act* it could not utilize aggressive marketing tactics or unlawful tactics to increase its own business revenue in interstate commerce by offering and providing its federal ERC business services for a contingency fee; inducing, coercing, and/or pressuring small

businesses into accepting and executing misleading and bait-and-switch contracts already known to Payroll to be in financial strain and potential loss of their businesses and livelihood through common knowledge of the effects of the COVID shutdowns and/or firsthand knowledge via its payroll processing services.

48. Defendant also knew or should have known that its existing businesses such as Plaintiff would unequivocally believe, rely on, and trust without question that Defendant was at all times material hereto doing business in accordance with the law in regard to the federal ERC funds, its business contracts, fees, and would only list in its business contracts the agreed upon terms. Defendant knew that due to such belief, reliance, and trust, its business clients would sign any documents and contracts sent to those businesses by Payroll without question.

49. Defendant, in violation of the federal C.A.R.E.S. Act, did knowingly, intentionally, recklessly, and/or through deliberate indifference unlawfully, deceptively, and fraudulently mislead, coerce, and induce Plaintiff, a business in Louisiana, for provision of Defendant's business services under the federal C.A.R.E.S. Act, into accepting Defendant's 15% contingency fee with additional promotions, then charged and filed suit against the Louisiana business Plaintiff in state court in Florida for a 30% fee and refused to accept the payment of the agreed 15% fee, after obtaining the federal ERC funds for Plaintiff.

50. Defendant knew Plaintiff would sign the contract without question and likely not even full read it due to Plaintiff's reasonable reliance on and prior ongoing existing business relationship with Defendant, and because Plaintiff desperately needed those federal ERC funds to keep its business afloat, as client had more than one

location and was in the process of expanding when COVID occurred.

51. Plaintiff was indeed induced, pressured, and coerced into executing the ERC contract with Payroll in total trust and reliance on its existing business relationship with Payroll LLC that Payroll's actions and contract were lawful, and as known to Payroll because Plaintiff was in dire need of those federal funds due to the devastating financial impact on businesses nationwide from the COVID pandemic and national COVID lockdown.  Defendant's actions were intentional and pierced the veil of any state/federal LLC liability protections.

52. As a direct and proximate cause of Payroll's violations, unlawful and deceptive business practices, and fraud, against Plaintiff under the federal C.A.R.E.S. Act, Plaintiff suffered loss of business income, loss of business reputation, loss of business quality, mental anguish, emotional distress, was forced to retain counsel to defend against Payroll's unlawful deceptive and fraudulent practices in state and federal court, and suffered other financial loss to include costs and expenses.

53. **Wherefore,** Plaintiff seeks trial by jury and damages exceeding $350,000, attorneys fees, and costs, and all other allowed relief, against Defendant.

## COUNT III:  UNFAIR OR DECEPTIVE BUSINESS PRACTICES

## FTC ACT: UNFAIR OR DECEPTIVE ACTS OR PRACTICES/ 15 U.S.C. § 45

54. Plaintiff re-alleges and incorporates paragraphs 1 – 31 as if plead herein.

55. At all times material hereto, Defendant was a licensed business located, headquartered, and doing business in Florida operating in interstate commerce through publicly advertising, marketing, offering, and providing its financial business services and products to businesses in Florida and in other states beyond Florida, for

13

a fee, to include its business services to procure federal funds for those businesses. Defendant is subject to the FTC.

56. At all times material hereto, Defendant intentionally, knowingly, recklessly, and/or with deliberate indifference committed acts and practices of misleading, defrauding, coercing, inducing, aggressive and predatory marketing of its financial services and products to businesses to procure federal ERC funds, charging prohibited fees for its financial services to procure federal ERC funds, committing bait-and-switch financial services schemes regarding federal ERC funds, filing predatory and false lawsuits against its business clients in and beyond Florida regarding federal ERC funds, which caused and/or was likely to cause injury to consumers, were not outweighed by countervailing benefits to consumers, and mislead and misrepresented its services and fees to consumers.

57. At all times material hereto, Defendant intentionally, knowingly, recklessly, and/or with deliberate indifference committed acts and practices of misleading, defrauding, coercing, inducing, aggressive and predatory marketing of its financial services and products to Plaintiff to procure federal ERC funds, charging Plaintiff prohibited fees for its financial services to procure federal ERC funds, committing bait-and-switch financial services schemes regarding federal ERC funds, filing predatory and false lawsuits against Plaintiff which is located in Florida regarding federal ERC funds, which caused injury to Plaintiff, was not outweighed by countervailing benefits to Plaintiff, and misled and misrepresented its services and fees to Plaintiff.

58. As a direct and proximate cause of Payroll's unfair or deceptive practices or acts

against Plaintiff under the FTC Unfair or Deceptive Practices or Acts, Plaintiff suffered loss of business income, loss of business reputation, loss of business quality, mental anguish, emotional distress, was forced to retain counsel to defend against Payroll's unlawful deceptive and fraudulent practices in state and federal court, and suffered other financial loss to include costs and expenses. Defendant's actions were intentional and pierced the veil of any state/federal LLC liability protections.

59. **Wherefore,** Plaintiff seeks trial by jury and damages exceeding $350,000, attorneys fees, and costs, and all other allowed relief, against Defendant.

## IV. STATE CLAIM

### COUNT I: CIVIL FRAUD/F.S. §§817.03 and .06

60. Plaintiff re-alleges and incorporates paragraphs 1 – 31 as if pled herein.

61. At all times material hereto, Defendant was a licensed limited liability company and business located, headquartered, and doing business in the state of Florida, operating in interstate commerce through publicly advertising, marketing, offering, and providing its financial business services and products to businesses in Florida and in other states beyond Florida, for a fee, to include its business services to procure federal funds for those businesses. Defendant is a business and legal person subject to the laws of Florida.

62. At all times material hereto, Defendant, through deception, misrepresentation, inducement, and/or coercion, schemed, deceived, and misrepresented its marketing and business services and fees for the federal ERC funds it procured for its business consumer/customer Plaintiff; its discounts on additional services its

15

provided Plaintiff; to induce Plaintiff to enter into business with Defendant to procure federal ERC funds under Defendant's business services; and then caused and commenced fraudulent legal action against Plaintiff predicated on its fraudulent inducement, coercion, misrepresentation, and scheme, to induce the Court to rule in Defendant's favor, solely for the financial gain and benefit of Defendant and to receive and procure monetary value from Plaintiff.

63. As a direct and proximate cause of Payroll's fraudulent practices, Plaintiff suffered loss of business income, loss of business reputation, loss of business quality, mental anguish, emotional distress, was forced to retain counsel to defend against Payroll's unlawful deceptive and fraudulent practices in state and federal court, and suffered other financial loss to include costs and expenses.  Defendant's actions were intentional and pierced the veil of any state/federal LLC liability protections.

64. **Wherefore,** Plaintiff seeks trial by jury and damages exceeding $350,000, attorneys fees, and costs, and all other allowed relief, against Defendant.

## IV. ATTORNEY'S FEES

80.  If Plaintiff prevails in this action, by settlement or otherwise, Plaintiff is entitled to and hereby demands attorney's fees under  federal and state laws claimed herein.

## VI. JURY DEMAND

81.  Plaintiff respectfully requests a jury trial on all claims in this matter.

**WHEREFORE, ALL PREMISES CONSIDERED,** Plaintiff prays that judgment be rendered against Defendant, for an amount in excess of $350,000.  Plaintiff further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully Submitted this 30th day of May 2025

                                By: <u>/s/ Rawsi Williams</u>
                                   Rawsi Williams, Esq. R.N.
                                   State Bar No. 103201
                                   RAWSI WILLIAMS LAW GROUP
                                   701 Brickell Ave., STE 1550
                                   Miami FL  33131
                                   TEL:  888-RawsiLaw/888-729-7452
                                   Email:rawsi@rawsi.com;
                                   Ajoseph2@rawsi.com;
                                   docservice@rawsi.com
                                   Attorney for Plaintiff